UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Jose L. Linares, U.S.D.J. |
| v. | : | |
| RAJ MUKHERJI | : | Criminal No. 06-65 |

BRIEF OF THE UNITED STATES IN OPPOSITION TO THE PRETRIAL MOTION OF
DEFENDANT RAJ MUKHERJI TO SUPPRESS EVIDENCE

CHRISTOPHER J. CHRISTIE
United States Attorney
U.S. Attorney's Office
970 Broad Street, Rm. 700
Newark, New Jersey 07102
(973) 645-2700

On the Brief:

Philip James Degnan
Assistant U.S. Attorney

TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 1 -

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 2 -

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 3 -

    I.     THE RECOVERY OF DEFENDANT'S BADGE AND IDENTIFICATION
          CARDS DID NOT VIOLATE HIS FOURTH AMENDMENT RIGHTS AS
          DEFENDANT'S UNDERLYING ARREST WAS THE RESULT OF A
          CONSTITUTIONAL SEARCH . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 3 -

          A.     Consent Search . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 3 -

          B.     Inventory Search . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 6 -

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 9 -

PRELIMINARY STATEMENT

In January 2006, a Newark, New Jersey Grand Jury returned a six-count Indictment against defendant Raj Mukherji. Counts One through Three charge that defendant Mukherji falsely assumed the identity of an officer or employee of the United States or a department or agency thereof and that he acted as such on three separate occasions. Count Four charges that defendant Mukherji did knowingly possess an identification document that appeared to be an identification document of the United States, knowing that such document was produced without lawful authority. Count Five charges that defendant Mukherji knowingly possessed a colorable imitation of a badge or identification card without authorization. And, Count Six charges that defendant Mukherji made false statements to federal law enforcement officers. The pending charges are based, in part, upon defendant Mukherji's possession and use of an invalid badge and credentials, the discovery of which defendant now seeks to suppress.

On October 27, 2008, defendant filed a pretrial motion seeking to suppress evidence collected after the lawful arrest of defendant Mukherji. Defendant's motion is based upon his contention that the underlying arrest was based upon evidence collected in violation of defendant's Fourth Amendment rights and, as such, the evidence obtained during the later search of the defendant subsequent to that arrest are fruits of an unlawful search. See Defendant's Brief in Support of Motion to Suppress (hereinafter Def. Sup. Br.) at 1-2. The United States respectfully requests that the Court deny defendant's motion in its entirety.

STATEMENT OF THE CASE

On November 8, 2004, members of the New Brunswick Police Department responded to the location of a harassment call.[1] Upon arrival, the officers saw defendant, Raj Mukherji, knocking on the complainant's door and yelling "I want my money." The officers observed defendant to be "in an excited and agitated state." The officers questioned defendant regarding his conduct. He responded, "She owes me money." He could not produce any identification at that time, indicating that his identification was located in a nearby vehicle.

During this encounter, defendant was in possession of a "small light blue bag." The officers asked defendant what was in the bag. In response, defendant handed the bag, which was open at the top, to Officer Liddy. Officer Liddy looked inside the bag and observed a clear plastic bag containing eight loose pills. Defendant admitted that the pills were Ritalin and that they belonged to another individual. Defendant was arrested and charged with possession of certain prescription drugs.

Thereafter, defendant was found to be in possession of a wallet containing identification cards and a badge. The identification cards bore the seal of the Central Intelligence Agency and the badge included the term "Defense Intelligence" and defendant's last name. The badge and the identification cards are now part of the Government's proofs for the charges pending against defendant in this Court.

---

[1] All of the facts stated in the instant submission are supported by the New Brunswick Police Report that is annexed as Exhibit 2 to defendant's moving papers.

ARGUMENT

I.    THE RECOVERY OF DEFENDANT'S BADGE AND IDENTIFICATION CARDS DID NOT VIOLATE HIS FOURTH AMENDMENT RIGHTS AS DEFENDANT'S UNDERLYING ARREST WAS THE RESULT OF A CONSTITUTIONAL SEARCH

Defendant contends that his Fourth Amendment rights were violated when New Brunswick police officers conducted a warrantless search of several containers within a small bag that was in his possession. Defendant further contends that the warrantless search led to the discovery of eight Ritalin pills that resulted in his being arrested on state charges. Defendant contends that, because this search was conducted without a warrant, the evidence seized as a result of his corresponding arrest -- namely the false badge and identification cards -- should be suppressed. The Government's version of the events differs significantly from defendant's and supports a finding that the discovery of the Ritalin pills was the result of a valid consent search. Defendant's arrest was, therefore, proper and the recovery of the false badge and identification credentials did not offend defendant's Fourth Amendment rights.

A.    Consent Search

It is axiomatic that "one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). Valid consent is that which is "freely and voluntarily given." Id. at 222 (quoting Bumper v. North Carolina, 391 U.S. 543, 548 (1968)). Indeed, the Government bears the burden of proving that the consent was freely and voluntarily given. See Bumper v. North Carolina, 391 U.S. 543, 548 (1968). The standard of proof required is preponderance of the evidence, see United States v. Velasquez, 885 F.2d 1076, 1081 (3d Cir.

1989), based upon the "totality of the circumstances," Schneckloth, 412 U.S. at 227.

It is beyond dispute that a person may waive his Fourth Amendment rights by consenting to a search. See Davis v. United States, 328 U.S. 582, 593-94 (1946). Such consent may come in a variety of different forms. See United States v. Wilson, 413 F.3d 382, 388 (3d Cir. 2005) (finding that a court may consider both verbal and non-verbal indicators of consent); United States v. Griffin, 530 F.2d 739, 742 (7th Cir. 1976) (finding that consent may be given "in the form of words, gestures, or conduct"). The critical consideration for the Court is whether an ordinary person would have understood defendant's conduct to signal consent. See United States v. Carter, 378 F.3d 584, 588 (6th Cir. 2004). Indeed, "the police are not held to a higher standard in this regard than an ordinary person" in this regard. See id.

Here, there can be little doubt but that defendant's conduct signified his consent to search the bag that was in his possession. As discussed above, members of the New Brunswick Police Department encountered defendant in response to a harassment call. When they arrived on the scene, they observed defendant knocking on the complainant's door in an "excited and agitated state." See Defendant's Ex. 2. He was yelling about money and was unable to produce any identification. At that point, defendant was asked what was in the bag that he had in his hand. In response, defendant simply handed that bag to New Brunswick Police Officer Liddy. Under those circumstances, that act was sufficient to signal that defendant has consented to the search of his bag. See, e.g., Carter, 378 F.3d at 588 (consent to enter residence implied because defendant stepped aside to let police officers inside); United States v. Gordon, 173 F.3d 761, 765-66 (10th Cir. 1999) (consent to search locked duffel bag implied when defendant handed a key to law enforcement office in response to the question "can you open that").

Once consent was given, the officers needed to do nothing more then look into the open bag to discover the contraband. Indeed, the Ritalin pills were located in plain view inside of the bag. The plain view exception allows a law enforcement official to seize evidence without a warrant when (1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed; (2) the officer had a lawful right of access to the object itself; and (3) the object's incriminating character was immediately apparent. See Horton v. California, 496 U.S. 128 (1990). The Horton Court eliminated the requirement that the discovery be inadvertent in order to fall within the plain view exception. See id.

Under these circumstances, the officers were acting well within the bounds of the Constitution. First, the New Brunswick police officers were lawfully in the location where evidence could be viewed. Indeed, the officers were dispatched to a location based upon a harassment call. Upon their arrival on the scene, the officers saw an excited and agitated individual banging on the door at the location specified in the harassment call. They were well within their rights to investigate the situation further to determine whether or not there was an act of harassment taking place or whether or not there was any danger to defendant, the complainant, or to the officers. See Florida v. Bostick, 501 U.S. 429, 434 (1991) ("Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions.").

Second, as discussed above, defendant consented to the examination of the bag that was in his possession.

The third criteria of the plain view doctrine -- that the object's incriminating nature is immediately apparent -- was also met in this case. It is not necessary that the Officers knew with

absolute certainty that the pills in defendant's bag constituted evidence of a crime, but only that there was a practical probability that the pills constituted incriminating evidence.  In other words, the seizure need only be supported by probable cause to believe that the item viewed was either contraband or would be useful in establishing that a crime had been committed.  See United States v. Hill, 19 F.3d 984, 989 (5th Cir. 1994); see also Texas v. Brown, 460 U.S. 730, 741-42 (1983) (finding that the facts available to the officer would warrant a person of reasonable caution in the belief that certain items may be contraband or useful evidence that a crime has been committed, not that such a belief was in fact correct or more likely true than false).  Here, Officer Liddy observed eight loose pills in a clear plastic bag.  Given that this is not the manner in which lawfully possessed drugs are typically transported, Officer Liddy rightfully believed that these pills may constitute contraband or, at the very least, evidence of a crime.  That belief was confirmed by defendant's responses to Officer Liddy's questions.  Accordingly, it cannot be said that the Officer's belief was unreasonable.

B.   Inventory Search

As a result of the lawful consent search of defendant's bag and his subsequent arrest for Possession of Certain Prescription Drugs, defendant was transported to the New Brunswick Police Department and "was found in possession of a wallet containing a picture identification . . . and badge in his rear pants pocket."  The recovery of this evidence was the result of a lawful inventory search.  Accordingly, defendant's motion should be denied.

The Supreme Court has held that incident to a lawful arrest, the arresting officers may search and seize items found on the arrestee's person.  See United States v. Robinson, 414 U.S. 218 (1973) (finding that the fact of a lawful custodial arrest established authority for a full search

of the person); see also United States v. Edwards, 415 U.S. 800 (1974) (search of clothing and personal possessions on defendant's person when arrested need not be contemporaneous with arrest); United States v. Rodriguez, 995 F.2d 776 (7th Cir. 1993) (search of address book at police station was proper search incident to arrest). Indeed, an inventory search incident to a custodial arrest, has been found to be a reasonable exercise of police authority.[2] Illinois v. Lafayette, 462 U.S. 640, 648 (1983) ("[W]e hold that it is not 'unreasonable' for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures."); Edwards, 415 U.S. at 807 (stating that "once the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant").

An inventory search promotes the following legitimate governmental interests: (1) protection of the property of arrested persons against theft; (2) deterring false claims from arrested persons regarding property taken from their possession prior to incarceration; (3) protection of arrested persons from injuring themselves while in custody; and (4) assisting law enforcement authorities in verifying the arrested person's identity. See Illinois v. Lafayette, 462 U.S. at 646. That such a search also promotes an investigatory purpose does not invalidate the intrusion. See United States v. Frank, 864 F.2d 992, 1001 (3d Cir. 1988).

As discussed above, defendant was lawfully arrested based upon his possession of certain

---

[2] Similarly, "officers may perform searches incident to constitutionally permissible arrests in order to ensure their safety and safeguard evidence." Virginia v. Moore, 128 S.Ct. 1598, 1607 (2008) (citing United States v. Robinson, 414 U.S. 218 (1973)). "The interests justifying a search are present whenever an officer makes an arrest." Id.

prescription drugs. The drugs were found based upon a lawful consent search. There can be little question, then, that the corresponding inventory search was constitutional, particularly in light of the fact that defendant was unable to produce identification upon request. Establishing his identity would have been of critical importance at this stage of his interaction with law enforcement.

Accordingly, for the reasons set forth above, the Government respectfully submits that his motion should be denied. Defendant's arrest by members of the New Brunswick Police Department was the result of a valid consent search of a bag that they observed to be in defendant's possession. Once the officers placed defendant under arrest, they then appropriately conducted an inventory search to determine whether or not there were other items in defendant's possession that need to be safeguarded or that might have constituted additional evidence of criminal conduct. Accordingly, the recovery of defendant's badge and credentials did not offend his Fourth Amendment rights and the evidence should not be suppressed.

## CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court deny defendant Raj Mukherji's motion without an evidentiary hearing.

                                    Respectfully submitted,

                                    CHRISTOPHER J. CHRISTIE
                                    United States Attorney


                              By: s/ Philip James Degnan
                                    PHILIP JAMES DEGNAN
                                    Assistant United States Attorney


Dated: November 4, 2008
       Newark, New Jersey